CITY OF NEW YORK v. DE MARCO et al.   (No. 6782.)

(Supreme Court, Appellate Division, First Department.   February 5, 1915.)

1. MUNICIPAL CORPORATIONS (§ 347*)—CONTRACTS—DISCHARGE OF SURETY—
RELEASE OF ACCRUED CLAIMS.

A contractor agreed to pay to a city a stipulated weekly sum for the privilege of picking over the ashes on its dumps, the contract providing that the work should be done at such hours of the day or night as directed by the street commissioner. The contractor and a surety company executed a bond to secure the performance of the contract, and after some time the street commissioner directed that part of the work which had theretofore been done in the daytime should be done at night, which direction the contractor claimed to be a breach of the contract and refused to make the weekly payments. A compromise was effected by which the city, in consideration of a reduced payment, released all claims against the contractor up to that date, but it was expressly provided that the rights of the parties as to future breaches of the contract were not to be affected by the release. The contractor again refused to make payments, and the city brought an action against him for breach of the contract and another against him and his surety on the bond. In both actions, the contractor counterclaimed for the alleged breach of the contract by the city. The two actions were tried together, and the trial court gave judgment for the city in the action against the contractor for the breach, and dismissed both the complaint and counterclaim in the other action, holding that the surety was released by the compromise and that there was no reason for giving judgment again against the contractor. *Held*, on appeal from the latter judgment, that the compromise was not an admission by the city that it had breached the contract, and that it had settled only accrued claims, and did not therefore discharge the surety as to subsequent breaches.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 876, 877;  Dec. Dig. § 347.*]

2. PRINCIPAL AND SURETY (§ 163*)—ACTIONS—RIGHT OF SURETY TO SUBROGATION.

Since the surety was liable for such breaches, the judgment should also be rendered against the contractor in that action, in order that the surety could be subrogated to the rights of the city thereunder, without bringing another action.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 446–454;  Dec. Dig. § 163.*]

Appeal from Trial Term, New York County.

Action by the City of New York against Celestine De Marco and another. From a judgment dismissing both the complaint and counterclaim, both plaintiff and defendants appeal. Judgment dismissing complaint reversed, and judgment awarded in favor of plaintiff.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

E. Crosby Kindleberger, of New York City (Terence Farley, of New York City, on the brief), for plaintiff.

D. Cady Herrick, of Albany (Frederick P. King, of New York City, on the brief), for defendant De Marco.

J. J. Alexander, of New York City, for defendant Bankers' Surety Co.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

LAUGHLIN, J. [1] On the 24th day of June, 1909, the defendant De Marco entered into a contract with the plaintiff, pursuant to the provisions of which, in consideration of the privilege of picking over ashes, street sweepings, and rubbish delivered at dumps, incinerators, and land fills in the boroughs of Manhattan and the Bronx for the period of three years from July 5, 1909, and reclaiming part of the part thereof of commercial value, he agreed, among other things, to pay to the plaintiff the sum of $1,717 weekly in advance during said period. As a condition of obtaining the contract, he was obliged to execute a bond in the penal sum of $25,000 for faithful performance. He as principal, defendant company as surety, executed the bond required.

This is an action on the bond, and it is brought against the principal and surety to recover a balance of the weekly payments which the former as the contractor agreed to make to the city. The issues in another action brought by the city against the contractor to recover damages for the same breaches of the contract, as this action is predicated upon, were by stipulation tried with the issues herein. In both actions the contractor interposed counterclaims, alike in each action, for damages claimed to have been sustained by him through alleged breaches of the contract on the part of the city. The court found in favor of the plaintiff in the other action, and adversely to the contractor on all issues presented by the counterclaim; and that decision has been reviewed concurrently with the one made in this action and, no prejudicial error having been found, is to be affirmed without opinion. The court, on the same evidence, having properly decided in the other action that the contractor was not entitled to recover on any of the counterclaims, the disallowance of the same counterclaims in this action followed logically. We are of opinion, however, that the court erred in dismissing the complaint. It was dismissed as to the surety company on the theory that the surety was released by a modification of the agreement between the city and the contractor without its knowledge or consent. The city having recovered in the other action, the trial court was of opinion that there was no necessity of another judgment against the contractor for part of the same amount in this, and therefore also dismissed the complaint as to the contractor.

The contractor entered upon the discharge of his duties under the contract and exercised the privileges thereby granted, and no controversy arose between him and the city with respect to such duties or privileges, or with respect to the obligations of the city, until on or about the 24th day of April, 1911. Prior to that time, the city had customarily delivered ashes at the dumps, with some exceptions known by the contractor to exist at the time the contract was let, during the daytime. By order of the commissioner of street cleaning, the delivery of ashes at certain dumps where the delivery thereof had theretofore been made in the daytime was after the date last mentioned directed to be made at night; and the contractor was required to perform his services under the contract at that time also. There was a further extension of the night work by like order on or about the 20th day of June, 1911. The city claimed the right to make these changes by virtue of provisions in the contract and specifications requiring the contractor to per-

form the services at such hours of the day or night as the commissioner of street cleaning might direct; and the contractor protested against the changes on the ground that he was, in effect, invited, before making the bid which resulted in°the contract, to examine the existing conditions, and was therefore entitled to rely upon the manner in which the work was then being done. The contractor, however, continued to perform the contract as required, but asserted a claim for damages and failed to make the weekly payments.

[2] The agreement, upon which the trial court based the dismissal of the action against the surety company, is a release executed by the contractor to the city, under date of September 30, 1911. It recites the making of the contract and the differences which arose between the parties thereunder as herein stated, and that they had agreed to compromise their respective claims to and including the date thereof, by the contractor paying the city the sum of $858.50 per week from April 24, 1911, to June 20, 1911, and $525 per week from the latter date to September 30, 1911, for the privileges exercised by him under the contract "without prejudice to and saving any further claim for damage which he," the contractor, might sustain from "any continuance of the alleged breach of contract" by the city "after the first day of October, 1911," and by the city accepting said sums "in full settlement of all debts and money obligations claimed" by it to have become due from the contractor, "but without prejudice to any claim" which it might elect to make against the contractor "for any payment provided for in said agreement, accruing after the first day of October, 1911." The remaining provisions of the release witnessed, in effect, that the contractor released and discharged the city from any claim which he had or might have against it for any breach of the contract to and including the date of the release; but without prejudice to, or waiver of, any claim which he might have thereafter for a continuance after the 1st of October, 1911, of the requirements which he claimed constituted breaches of the contract.

There is no force in the contention that, by thus compromising its claims against the contractor, the city acknowledged or admitted that it was guilty of a breach of the contract, and that the surety company was thereby released. The settlement was with respect to the contract in so far as it had been executed, and it was clearly provided that it was in no manner to be construed as affecting the rights of either party under the contract in so far as the contract remained executory. A settlement with respect to accrued claims under a contract, which does not release either party from performance of his obligation under the contract in so far as they remain executory, does not discharge a surety from liability for a future breach. See Cohn v. Spitzer, 145 App. Div. 104, 129 N. Y. Supp. 104; Loos v. McCormack, 107 App. Div. 8, 93 N. Y. Supp. 1088, 95 N. Y. Supp. 1141. This action is to recover for alleged breaches of the contract accruing after the execution of the release. The city has made no settlement with the contractor with respect to the period for which it seeks to recover in this action. The surety company could be fully subrogated to the rights of the city against the contractor by satisfying the claim of the city made in this

action. The court therefore erred in dismissing the complaint against the surety company; and it follows logically that it erred in dismissing the complaint against the principal, for the surety company is entitled to have the judgment run against the principal so that it may be subrogated to the rights of the city thereunder, without bringing another action.

The court, however, found the material facts, and it is unnecessary to order a new trial. Conclusions of law numbered first and third are therefore reversed, and conclusions of law to the effect that the plaintiff is entitled to recover $25,000 with interest against both defendants, together with the costs of the action to be taxed, are substituted therefor; and the judgment in so far as it dismisses the complaint is reversed, with costs to plaintiff-appellant, and judgment awarded in favor of the plaintiff-appellant in accordance with the conclusions of law as so modified. All concur.